UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BETTY A. MARKUS, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 4:19-CV-2424 NAB |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Betty Markus' appeal regarding the denial of disability insurance benefits under the Social Security Act. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 5.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.  Issue for Review**

Markus presents one for review. She asserts that the administrative law judge ("ALJ") failed to properly evaluate her residual functional capacity. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**II.  Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether

evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

**III. Discussion**

    **A.**    **ALJ's Decision**

The ALJ found that Markus met the insured status requirements of the Social Security Act through March 31, 2020 and that she had not engaged in substantial gainful activity since December 27, 2017, the alleged onset date. (Tr. 17.) Next, the ALJ found that Markus had the severe impairments of systemic lupus erythematosus (SLE), degenerative disc disease of the lumbar and cervical spine with cervical fusion, right Achilles tendonitis, right glutenous medius tendinopathy with right hip bursitis, obesity, and fibromyalgia. (Tr. 18.) The ALJ found that Markus' cataracts, basal cell carcinoma, hypertension, hyperlipidemia, hypothyroidism, diverticulitis, and major depressive disorder were non-severe impairments. (Tr. 18.)

The ALJ determined that Markus did have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Markus had the residual functional capacity to perform a range of sedentary work that includes (1) lifting, carrying, pushing, or pulling 10 pounds

3

occasionally and less than 10 pounds frequently; (2) sitting for 6 hours in an 8-hour workday; (3) standing or walking for 2 hours in an 8-hour workday; (4) frequently reaching, handling, fingering, and feeling; (5) never climbing ropes, ladders, or scaffolds; (6) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and (7) no exposure to unprotected heights or hazardous machinery. (Tr. 20.) Based on the foregoing, the ALJ found that Markus was capable of performing her past relevant work as a utilization review coordinator. (Tr. 25.) Therefore, the ALJ ultimately concluded that Markus was not under a disability, as defined by the Social Security Act, from December 27, 2017 through March 28, 2019.

### B.     RFC Determination

Markus contends that the ALJ erred in the formulation of the RFC, because substantial evidence supports her allegation that she suffers from significant pain, which would interfere with her ability to sit, stand, and concentrate for an entire workday.

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907. It is the claimant's burden to establish his RFC. *Masterson,* 363 F.3d at 737. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

4

to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932.

### 1. Whether the RFC was Supported by Substantial Evidence

Markus argues that the ALJ's RFC determination is not supported by substantial evidence because the record shows Markus suffers from disabling pain that interferes with her ability to sit six hours in an eight-hour workday, to stand or walk six hours in an eight-hour workday, or to maintain concentration and persist at tasks. (Doc. 12 at 4.) Defendant responds that the ALJ properly evaluated the evidence, and the evidence does not support greater limitations in Markus's ability to concentrate, sit, or stand due to pain or any other symptom beyond the sedentary limitations the ALJ set forth in her RFC finding. (Doc. 17 at 13.)

First, Markus points to imaging and scans reflecting injuries to support her complaints of pain: In April 2017, an MRI of her pelvis demonstrated right ischial tuberosity heterotopic ossification corresponds to sclerotic lesion on hip radiographs; right gluteus medius tendinopathy with split tear of the gluteus medius tendon and peritendinitis; and mild bilateral greater trochanteric bursitis. (Tr. 376-377.) In May 2017, an x-ray of the lumbar spine revealed multilevel lumbar disc degenerative change, severe at L5-S1, and an MRI of the lumbar spine revealed mild to moderate degenerative changes of the lumbar spine, more pronounced at L5-S1. (Tr. 372-374.) In May 2018, x-rays showed prior anterior cervical discectomy and solid cervical fusion at C5-C6, mild C3-C4, moderate to severe C4-C5, and moderate C6-C7 degenerative disc disease. (Tr. 368.)

Second, Markus argues there is no medical support for the ALJ's finding that Markus has no non-exertional limitations from pain. She contends that no medical professional provided an opinion on whether Markus's physical pain interferes with her ability to concentrate and persist at

5

tasks, so there is no medical evidence in the record regarding her ability to function in the workplace that supports the RFC.

The ALJ provided a detailed summary of the objective medical evidence. (Tr. 18-25.) She explicitly considered the evidence Markus contends should support a finding that she cannot sit for long periods of time and that pain interferes with her ability to concentrate and persist at tasks. As the ALJ discussed in her decision, Markus's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Markus's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the evidence in the record. The ALJ also noted that no evidence connects to the alleged onset date of December 27, 2017.

Following the April and May 2017 x-ray and MRIs reflecting degenerative changes, Markus saw Dr. John Hoffman at BJC Central Medical Group. At a June 6, 2017 visit, Dr. Hoffman noted that following the MRI showing a herniated disk with stenosis, Markus's pain was improving with an anti-inflammatory, and she did not require narcotics to manage her pain. (Tr. 505-506.) Dr. Hoffman referred her for physical therapy, but records from later that year reflect that Markus declined PT. (Tr. 513.) The records reflect no further treatment until September 20, 2017, when Markus saw Dr. Sherry Shuman, a rheumatologist at BJC Central Medical Group. Markus reported pain all over and pain in her right hip and knee that radiated to her foot. (Tr. 508.) Upon physical exam, a 30-joint exam revealed Markus was diffusely tender over soft tissue and joints, but had no joint swelling. (Tr. 511.) Dr. Shuman noted that "some" of Markus's pain is related to her spinal stenosis and that she declined physical therapy. (Tr. 513.) On November 3, 2017, Markus reported to Dr. Hoffman at her annual exam that she had significant pain at work despite using a standing desk, and reported her pain was at an 8 out of 10. (Tr. 518.) Dr. Hoffman recommended she

6

continue gabapentin[2] and hydrocodone[3] as needed for back pain and advised her to take a couple weeks off work. (Tr. 519.) On November 20, 2017, Markus returned to the office and saw Dr. Shuman. Markus reported her pain is improved and she feels better when she is more active. (Tr. 524.) Markus did not report significant mental problems at that time, and her mental exam was normal. Upon physical exam, a 30-joint exam revealed Markus had no tenderness or inflammation, and Dr. Shuman found her pain "is much improved" on the gabapentin and etodolac that had been prescribed two months earlier. (Tr. 513, 527.)

The ALJ highlighted that the record reflects a gap of no treatment after November 2017 until May 3, 2018, when Markus saw Dr. Hoffman and reported having a lot of neck pain and a history of cervical fusion and lumbar stenosis. (Tr. 529.) She had the aforementioned May 2018 x-rays at this time. Dr. Hoffman had Markus continue with gabapentin and etodolac for the pain, and documented that "She is incapacitated and unable to work." (Tr. 529.) The ALJ noted that although the scans at that time showed prior anterior cervical discectomy and solid cervical fusion and degenerative disc disease, the records reflect little ongoing treatment. (Tr. 22, 368-369.)

In July 2018, Markus reported increasing fatigue, but few mental problems were noted. (Tr. 22, 532-533.) During an orthopedic consultative exam conducted the same month, Markus was diagnosed with spinal stenosis of the lumbar spine with probable mild radiculopathy, a history of cervical fusion, and a history of systemic lupus erythematosus. (Tr. 22, 310.) Markus reported any activity longer than a half hour was painful, that she had to pace herself with housework, could not stand for more than half an hour at a time, could only walk comfortably for about one and a half blocks, and had recent increased pain in her right upper arm. (Tr. 22, 309.) On exam, Markus

---

[2] Gabapentin is known as an anticonvulsant or antiepileptic drug and is used with other medications to prevent and control seizures and to relieve nerve pain. *See* WebMD, http://www.webmd.com/drugs (last visited March 29, 2021).
[3] Hydrocodone contains a combination of an opioid (narcotic) pain reliever—hydrocodone—and a non-opioid pain reliever—acetaminophen. *See* WebMD, http://www.webmd.com/drugs (last visited March 29, 2021).

demonstrated normal gait without assistance, minimal thoracolumbar scoliosis in the standing position, and the abilities to stand on her toes and heels, bend and squat to approximately 60 degrees, dress and undress without assistance, and rise from the chair and exam table independently. (Tr. 22, 308-309.) She also demonstrated essentially complete cervical motion with mild crepitus and essentially complete shoulder, elbow, hand, and wrist motion bilaterally, and the ability to fully extend her fingers and make a fist with 4/5 grip strength. (Tr. 22, 309-310, 313.) There was no swelling of any peripheral joint and no significant restriction of any upper or lower extremity peripheral joints, though there was evidence suggesting nerve entrapment in the lumbar spine consistent with spinal stenosis. (Tr. 22, 309-313.)

In July of 2018, Markus also underwent a psychological consultative exam with psychologist Dr. Coulter, who opined after examining Markus that she had no impairment in her ability to understand, remember, and apply information, noting that Markus appeared to have the cognitive abilities to learn, recall, and use information to perform work activities, and no impairment in concentration, persistence, and pace because she answered questions appropriately and demonstrated good persistence and pace during the exam. (Tr. 24, 305.) Dr. Coulter found Markus had a moderate impairment in her interaction with others because her low mood, fatigue, and chronic pain contribute to social withdrawal and irritability, but Markus is able to engage with others appropriately and seem to have a pleasant disposition that would allow her to relate well with supervisors and co-workers. The ALJ found Dr. Coulter's opinion to be somewhat persuasive, although the record does not support a finding of moderate limitation Markus's ability to interact with others. (Tr. 24.) Dr. J. Edd Bucklew, the state agency psychologist, reviewed Markus's medical records and found that she had mild limitation in her ability to understand, remember and apply information, interact with others, and adapt and manage herself, and no limitation in her

8

ability to concentrate, persist, and maintain pace. (Tr. 24, 66-67.) He specifically cited that Dr. Coulter found no impairment with understanding, remembering, or applying information, and although Markus noted difficulty with concentration, she is able to go out alone, goes shopping, drives, and gets along well with others. (Tr. 67.) The ALJ found Dr. Bucklew's opinion to be somewhat persuasive, although she believed the current medical records support a finding of mild limitation in Markus's ability to concentrate, persist, and maintain pace. (Tr. 24.)

In July of 2018, Dr. James Schell, the state agency physician, reviewed Markus's medical records and opined that she could perform a range of sedentary work, including sitting (with normal breaks) for about 6 hours in an 8-hour work day and standing or walking (with normal breaks) for 2 hours of an 8-hour workday. He specifically cited to the July 2018 consultative exam, including Markus's reports of pain, as a basis for his findings. (Tr. 24, 68-70.) The ALJ found Dr. Schell's opinion to be persuasive.

On August 24, 2018, Markus saw Dr. Hartman, complaining of pain that radiated down her neck to her right shoulder and hand, low back pain, and right buttock, hip, and leg pain with left leg numbness. She stated the pain was worse with lifting, upper extremity activity, standing, squatting, sitting and walking, but the pain improved with rest, heat, and pain relievers. (Tr. 23, 450.) On exam, she demonstrated antalgic gait on the right, but was able to heel walk, toe walk, and tandem walk, and demonstrated 5/5 bilateral strength throughout with shoulder abduction, elbow flexion and extension, wrist extension, finger flexion and abduction, hip flexion, knee flexion and extension, ankle dorsiflexion, eversion, inversion, plantarflexion, and great toe extension. Markus showed intact and symmetric bilateral reflexes throughout, and while she showed a diminished range of lumbar motion, passive hip range of motion was symmetric and pain-free, and supine and reverse single leg raises were negative. (Tr. 23, 451-452.) Markus was

9

diagnosed with left lateral femoral cutaneous neuropathy, right C6-C7 cervical radiculitis, and spinal stenosis and Dr. Hartman recommended conservative treatment of sacroiliac joint injection, right greater trochanteric bursa injection, and six weeks of physical therapy. (Tr. 23, 451-452.)

On November 5, 2018, Markus returned to Dr. Hartman and reported being unable to get the previously-recommended joint injection due to a bout of diverticulitis. Markus reported she continued to have right hip and low back pain. (Tr. 23, 455-457.) On November 19, 2018, Markus returned to Dr. Shuman and reported that she had stopped working due to difficulty with concentration and sitting, however her mental status exam and 30-joint exam were normal. (Tr. 23, 536-539.)

Based on a careful review of the record, the Court finds that the ALJ's determination that Markus can perform sedentary work, including that she can sit for 6 hours in an 8-hour workday and stand or walk for 2 hours in an 8-hour workday, is supported by substantial evidence in the record as a whole. First, there is medical evidence in the record to support an exertional limit of sedentary work. The medical evidence reflects that Markus had been living and working with some of her medical impairments for years before her alleged onset date of December 27, 2017, and that she and her providers managed her pain symptoms with conservative treatment and medication. Although Dr. Hoffman opined that Markus "is incapacitated and unable to work," this appears to be a reiteration of language from Markus's complaints. (Tr. 529-530.) The ALJ did not find this opinion to be persuasive because it consists solely of an opinion on the ultimate issue reserved to the Commissioner, and Dr. Hoffman provided no opinion regarding Markus's specific functional limitations or abilities. (Tr. 24.) *See* 20 C.F.R. § 404.1527(d); *see also Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003) (affirming ALJ's decision discrediting treating physician's opinion that applicant had significantly limited mobility where "few if any functional limitations" were

10

placed on the applicant by his other physicians); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (discounting treating physician statement opining that claimant could not sit, stand, or walk for more than 20 minutes at a time or one hour total per day where no similar restrictions were included in her treatment records, and the consulting doctor concluded that the applicant could sit, stand, or walk up to six hours per day).

Second, there is medical evidence in the record to support a non-exertional limit of sedentary work. Markus suggests there is no medical professional opinion on whether her pain interferes with her ability to concentrate and persist at tasks such that there is not support for the RFC. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932. There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Id.* at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same). "In the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Hensley*, 829 F.3d at 932 (citing *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2001)). The ALJ properly considered that despite Markus's reports of difficulty remembering and focusing, her mental status exams were consistently normal, and as discussed more fully below, Markus was capable of performing extensive daily activities. The psychological consultative exam also revealed no impairment to Markus's daily functioning in concentration, persistence, and pace.

Based on the foregoing, the Court finds that substantial evidence supports the RFC determination and the ALJ's decision as to disability.

11

## 2. Markus's Subjective Complaints

Markus contends that the ALJ failed to identify valid reasons for discrediting Plaintiff's subjective complaints of pain pursuant to *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

> (1) The claimant's daily activities;
> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
> (3) Any precipitating or aggravating factors;
> (4) The dosage, effectiveness, and side effects of any medication; and
> (5) The claimant's functional restrictions.

*Polaski,* 739 F.2d at 1322. It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* "While the extent of daily living activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility." *Walker v. Colvin*, 124 F.Supp.3d 918, 936 (E.D. Mo. 2015).

"Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the [ALJ] must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant." *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978). "Whether or not a medical explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain." *Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1984).

After review of the record, the Court finds that the ALJ conducted a proper assessment of Markus's pain symptoms, and that her assessment is supported by substantial evidence. The ALJ expressly cited Social Security Ruling 16-3p, "Evaluation of Symptoms in Disability Claims," 2017 WL 5180304 (Oct. 25, 2017), relevant regulations, discussed the allegations in Markus's hearing testimony and function report, and considered all of Markus's symptoms. (Tr. 20-21.)

Markus testified regarding work duties she could no longer perform in the manner she had performed them before her impairments. She testified that her ability to sit at the computer and concentrate on the cases was an issue. She specifically detailed her problems were with concentration and focus. (Tr. 47, 49.) She testified that she cannot look at a computer screen for as long as she used to, nor sit at a computer for as long as she used to because of her vision and her shoulder pain affecting her ability to use the mouse. (Tr. 52-53.) She testified she is okay to look at the computer screen for thirty to sixty minutes and then can get up to move around and do something else. (Tr. 53.)

Markus's function report describes daily activities including household chores, caring for her dogs, preparing meals, and reading and watching television. (Tr. 170-173.) She grocery shops weekly, visits her grandchildren once or twice a week, and tries to see other family weekly. (Tr. 171-172.) She reports paying attention is usually not a problem, but also states she has a limited ability to concentrate. (Tr. 174.)

The evidence supports the ALJ's finding that Markus's reports of the intensity, persistence and limiting effects of her symptoms were not consistent with her daily activities. *See, e.g., Wagner v. Astrue,* 499 F.3d 842, 852-853 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible); *Roberson v. Astrue,*

481 F.3d 1020, 1025 (8th Cir. 2007) (caring for an eleven-year-old, driving, fixing simple meals, doing housework, and shopping for groceries were "extensive daily activities" that did not support claimant's alleged inability to work); *Riggins v. Apfel,* 177 F.3d 689, 693 (8th Cir. 1999) (playing cards, watching television, shopping, performing occasional housework, visiting his mother, and transporting family members were activities inconsistent with disabling pain).

Further, although Markus was living with several conditions during the alleged disability period, the ALJ considered evidence that Markus's complaints of pain associated with the conditions were alleviated by medication. (Tr. 450, 505-506, 517, 524, 544.) Moreover, the objective evidence did not fully support Markus's complaints of pain. Markus states that her May 2017 diagnosis of spinal stenosis rendered her unable to tolerate sitting for 8-10 hours per day, and she eventually had to stop working in December 2017.  (Tr. 169.) However, in November 2017, approximately one month before the December 27, 2017 alleged onset date of disability, medical records reflect her pain had improved, and she did not have any further treatment until May 2018. (Tr. 524, 529.)

The Court acknowledges that there is evidence in the record that tends to support Markus's complaints of pain. Despite reporting her pain improved in November 2017, Markus reported pain to multiple providers in 2018, including pain in her neck, back, right arm, right shoulder and hand, right hip, intermittent right flank pain, and generalized joint and muscle pain. (Tr. 301, 308, 450, 455, 529-530, 532, 536.) Records indicate Markus was treated with numerous medications and treatments for pain, including Cymbalta, hydrocodone, tramadol, gabapentin, etodolac, atenolol-chlorthalidone, and aspirin. (Tr. 466, 508, 509, 530, 544.) Markus also reported to a professional counselor  her concerns about her physical pain and the difficulties associated with the pain and its effect on her life. (Tr. 460-466.)

As discussed above, it is Markus's burden, not the ALJ's burden, to prove her RFC. Although there was evidence in the record from which the ALJ might have found Markus's pain was so severe that it would cause her to be unable to sit for six hours or remain on task at work, there was also contrary evidence, including evidence that medication was at least partially effective in controlling Markus's pain, evidence that Markus's pain symptoms improved, evidence that objective findings did not fully substantiate Markus's complaints of pain, and evidence that Markus was able to engage in daily activities that were inconsistent with her complaints of *disabling* pain. Based on evaluation of the *Polaski* factors, the ALJ did not improperly discount Markus's subjective complaints.

Additionally, because the ALJ found that Markus could only perform sedentary work, she had already assumed significant symptoms. The ALJ's restriction to sedentary work is noteworthy because it shows that, despite the lack of objective medical evidence supporting functional restrictions, the ALJ did take into account some of Markus's subjective complaints. *See, e.g., Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005) ("[Claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating physician's] medical opinions."). However, the inquiry conducted by the ALJ is not a determination of whether the claimant suffers from significant symptoms and suffering some difficulty or limitations, but rather a determination if that claimant is disabled under the Social Security Act.

## IV.   Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would

15

find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (Docs. 1, 12.)

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2021.